IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT J. EBERZ,                      )
                                     )
          Plaintiff,                 )   Civ. No.  CV-06-641-TC
                                     )
     vs.                             )
                                     )
                                     )
                                     )   OPINION AND ORDER
OREGON DEPARTMENT OF STATE           )
POLICE, an Agency of the State       )
of Oregon; ALFRED C. BATHKE,         )
JAMES RAGON aka JIM RAGON,           )
CRAIG DURBIN, CYNTHIA KOK,           )
PETER SPIRUP, and DAVID REESE,       )
                                     )
          Defendants.                )
     _____)

Coffin, Magistrate Judge:

     Plaintiff, currently employed by the Oregon State Police,

brings a number of state and federal claims against his

employer, five of its officials, and the general counsel to the

governor of Oregon.  Before the court are defendants' motions

for summary judgment (#142, brought by David Reese; #147,

brought by Oregon State Police, Craig Durbin, Cynthia Kok, and

Peter Spirup; and #150, brought by Alfred Bathke and James

Ragon).  For the reasons that follow, motions #142 and #150 are

granted, and motion #147 is granted in part and denied in part.

                         Background

     The following summary of facts is drawn from the record

before the court; additional facts are included as necessary in

the analysis of particular claims.  Plaintiff, a Mexican-

1 Opinion and Order

American male, has been employed by Oregon State Police (OSP) from 1994 until present.  As explained below, he was terminated in January 2006 and later reinstated.  His position is Senior Oregon State Trooper.  In 2002, he began work at the Tribal Gaming Section (TGS) of the Oregon State Police, where he conducted background investigations on vendors who applied to transact business with Oregon tribal casinos.  In 2004, plaintiff investigated Galaxy Gaming of Oregon, LLC (Galaxy Gaming).  During his work at TGS, plaintiff was supervised by Sgt. Charles Burdick, Sgt. James Ragon, and Lt. Alfred C. Bathke.  Bathke and Ragon are defendants in this action.

OSP's costs incurred in investigating vendors who applied to engage in gaming business with the tribes were typically billed to the vendor.  In August 2004, Bathke directed Burdick to bill the background investigation of Galaxy Gaming (a potential vendor) to the tribes as a training expense, rather than to Galaxy Gaming.  Burdick then apprised plaintiff of the directive.  Plaintiff asserts that the billing was fraudulent and violated the compacts between the Native American Tribes of the State of Oregon and the State of Oregon, and he alleges that he feared retaliation if he did not comply with the directive.

Bathke reasoned that certain investigative expenses could be billed to the tribes as "training," which included administrative overhead, rather than to the vendor.  Bathke explained that because the Galaxy Gaming investigation was complex and occasioned an opportunity to document certain investigative results that could be useful for training, it was

2 Opinion and Order

appropriate to bill certain expenses to the tribes as training.

After Ragon arrived at TGS in 2005, plaintiff advised Ragon of the billing practice, which he characterized as "bogus," and Ragon thereafter approved of plaintiff's billing in the Galaxy investigation.

In July 2005, plaintiff met with former OSP Gaming Division Commander Randy Sitton, who was then employed with the National Indian Gaming Commission, to complain about the billing scheme.  At the meeting, plaintiff gave Sitton a Galaxy Gaming report as a work sample, in an effort to obtain future NIGC employment.  Plaintiff later learned from the TGS auditor, Lili Wright, that the billing practice led to a cost to the Native American tribes of Oregon of between $30,000 and $40,000.

Between July 11 and 19, a colleague of plaintiff, Detective Rick Narvaez, told Bathke and Ragon that plaintiff complained to Sitton and had contacted BOLI concerning the billing issue.  Ragon and Bathke were concerned that the billing complaints would raise alarm with the tribes, deemed plaintiff's complaints to non-TGS officials to be inappropriate, and were concerned that the complaints involved confidentiality violations.

Plaintiff complained to the Lynn Hillman at the Grand Ronde Gaming Commission about the billing practices.  Narvaez again apprised Bathke of plaintiff's intent to report the billing practices.  Bathke testified that he met with Cynthia Kok, OSP's Captain of Professional Standards and a defendant in this action, and another official, concerning plaintiff's

reporting activity.

Bathke also met with David Reese, general counsel to the governor of Oregon and a defendant in this action, and another official, and Reese decided that funds would be refunded to the tribes.  Later in July, plaintiff reported his billing concerns to Oregon Attorney General Hardy Myers and to OSP Lt. Col. McLain.

Also in July 2005, OSP conducted a personnel investigation concerning plaintiff.  Plaintiff declared that, prior to the investigation, he had gathered reports he had drafted as an officer in an envelope labeled "Work Samples" in preparation for an employment application, and someone later took the "Work Samples" envelope from his desk.

The personnel investigation was precipitated by a complaint Bathke received on July 8, 2005, concerning plaintiff.  OSP employee Aymie Olsen reported that plaintiff and a colleague viewed inappropriate material on a computer in the workplace.  The objectionable video was a movie scene involving unclothed women.  In the course of Ragon's investigation, Narvaez told Ragon that another coworker, Howery, had viewed pornography; Howery viewed the material on his own laptop and outside work time, and received no formal discipline.  On July 18, Ragon took plaintiff's computer, and plaintiff was temporarily assigned to another case.

Ragon was removed from investigating the complaint about the inappropriate video because Ragon might be considered as a material witness.  Bathke, too, was removed from responsibility in the investigation after plaintiff made a complaint of

4 Opinion and Order

wrongdoing against Bathke.[1]  Thereafter, Kok assigned Hershman, an OSP inspector, to investigate the complaint of inappropriate video viewing against plaintiff.  Hershman also investigated concerns that plaintiff had disclosed confidential information to Sitton, and whether plaintiff complied with computer and time-reporting policies.  Hershman submitted his report to Kok.

On July 28, Bathke was notified that plaintiff had e-mailed a complaint concerning OSP billing practices to Attorney General Myers.  Plaintiff had forwarded the e-mail to Lt. Col. McLain, who turned plaintiff's complaint over to Craig Durbin (OSP's Director of Gaming Enforcement and a defendant in this action) on July 28.

Kok appointed Walt Markee, a supervisor in OSP's Fish and Wildlife Division, to conduct an internal investigation into plaintiff's billing complaints.  Durbin drafted findings of fact based on information Markee had gathered.  Concerning Bathke's billing directive, Durbin found that the practice was not inappropriate.

On August 15, according to plaintiff's declaration, Ragon presented plaintiff with a letter authored by Spirup stating that plaintiff had disclosed confidential OSP documents to an unauthorized party, and that his disclosure was a "serious matter."  On November 21, plaintiff submitted a BOLI complaint, and, on November 23, he was presented with Durbin's Finding of

---

[1] At some point after Bathke was removed from the personnel investigation, he raised a question concerning a discrepancy in dates on plaintiff's BOLI complaint and other statements concerning events surrounding plaintiff's disclosures concerning billing practices, and inquired whether the discrepancy should be pursued as a "false swearing" offense.

Fact, which stated that plaintiff disclosed a confidential department document, used a department computer for personal use, misrepresenting billable hours, and was untruthful in the course of a department investigation. Plaintiff was placed on administrative leave that day.

On December 28, Durbin gave plaintiff a predismissal letter, and on January 19, 2005, Durbin terminated plaintiff for the reasons stated in the Finding of Fact. Durbin made the termination decision with input from Kok, Spirup, and a DOJ attorney. Plaintiff was reinstated to his prior position following his post-termination arbitration hearing. He was awarded backpay during the period of termination but no unaccumulated overtime that he might have earned if his employment were not interrupted.

Plaintiff had been licensed by the Oregon Department of Public Safety Standards and Training (DPSST) to conduct Driving Under the Influence of Intoxicants and Drug Recognition Expert training. In January 2006, Kok apprised DPSST of personnel actions taken against plaintiff. DPSST decertified him, resulting in his inability to conduct the training sessions enabled by the DPSST license.

Plaintiff now brings a number of section 1983 and employment-related claims against OSP and the named defendants. Defendants have moved for summary judgment against certain of those claims. As explained below, summary judgment is granted on the section 1983 equal protection claims against Reese, Bathke and Ragon; section 1983 first amendment claims against Reese, Bathke, Ragon, and Spirup; equal protection "class of

6 Opinion and Order

one" claims against OSP and all individual defendants; section
1981 claims against Bathke and Ragon; and all section 1983 due
process claims against all defendants.  Summary judgment is
denied with respect to plaintiff's section 1983 first amendment
claims against Kok and Durbin.

<u>Legal Standard</u>

Summary judgment is appropriate where "there is no genuine
issue as to any material fact and . . . the moving party is
entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c).  The initial burden is on the moving party to point out
the absence of any genuine issue of material fact.  Once the
initial burden is satisfied, the burden shifts to the opponent
to demonstrate through the production of probative evidence
that there remains an issue of fact to be tried.  <u>Celotex Corp.
v. Catrett</u>, 477 U.S. 317, 323 (1986).  Rule 56(c) mandates the
entry of summary judgment against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will
bear the burden of proof at trial.  In such a situation, there
can be "no genuine issue as to any material fact," since a
complete failure of proof concerning an essential element of
the nonmoving party's case necessarily renders all other facts
immaterial.  The moving party is "entitled to a judgment as a
matter of law" because the nonmoving party has failed to make a
sufficient showing on an essential element of her case with
respect to which she has the burden of proof.  <u>Id.</u> at 32.
There is also no genuine issue of fact if, on the record taken

as a whole, a rational trier of fact could not find in favor of the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).

Analysis

I.  Section 1983 Due Process Claims

Procedural Due Process

Plaintiff asserts that he had a property interest in his job and in property that was taken from him during the investigation process, and that he was deprived of those interests without due process. In order to withstand summary judgment on a section 1983 claim based on procedural due process, plaintiff must demonstrate the existence of a genuine issue of material fact on each of the following elements: (1) plaintiff possessed a property or liberty interest, (2) he was deprived of that interest, and (3) the deprivation was effected without due process. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).

8 Opinion and Order

Whether or not plaintiff can demonstrate a property interest in his job, the record does not disclose a genuine issue of material fact on the question of whether he was deprived of that interest without due process. Under Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985), an employee with a constitutionally protected property interest in his employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Here, the record indicates that plaintiff underwent a personnel investigation and received pretermination notice of the bases for his termination. He was presented with the Findings of Fact on which OSP based its termination decision, and had the opportunity to rebut the findings either personally or through his attorney, at the predismissal hearing. After he was terminated, he availed himself of the post-termination arbitration process, which led to his reinstatement with back pay.

To the extent that plaintiff also contends that any defendant deprived him of a liberty interest without due process when he was terminated, this argument is unavailing. The liberty component is implicated only where the plaintiff has suffered "a complete prohibition of the right to engage in a calling[.]" Conn v. Gabbert, 526 U.S. 286, 292 (1999). Here, plaintiff was reinstated after invoking the post-termination process that was available to him and followed in a routine manner. His temporary unemployment was remunerated by an award of backpay. The interruption alone does not rise to

the level of a deprivation of a liberty interest, and in any case, constitutionally adequate procedure was provided.

Plaintiff has also asserted that defendants deprived him of a property interest by removing his office computer and by taking work samples he had prepared to submit for a job application.  There is no indication in the record that either item was plaintiff's personal property, and plaintiff has not explained how, if at all, plaintiff maintained a property interest in those items.  See Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (deprivation of a property interest, as defined by state law, is required to state a section 1983 procedural due process claim).  On this record, plaintiff's due process based argument with respect to those items fails.

Substantive Due Process

In order to withstand summary judgment on a section 1983 claim based on substantive due process in the public employment context, the record must disclose a genuine issue of material fact indicating that the employer has taken actions that effectively foreclose the plaintiff employee from a particular occupation.  Engquist v. Oregon Dep't of Agric., 478 F.3d 985, 996-98 (9th Cir. 2007), cert. granted, __ U.S. __ (Jan. 11, 2008).  The claim is limited "to extreme cases, such as a government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure."  Id. (internal quotation marks and citation omitted).

10 Opinion and Order

1    Here, plaintiff has been reinstated to his former position
2    but argues that the events surrounding the termination maligned
3    his reputation, affecting future employment prospects.  Under
4    these circumstances, I cannot hold that plaintiff was
5    foreclosed from pursuing his chosen occupation.
6        Plaintiff further argues that his substantive due process
7    rights were violated when OSP failed to award unaccumulated
8    overtime for hours that he was unable to work while terminated.
9    In the absence of any authority indicating that plaintiff has a
10   property interest in unaccumulated overtime, the court denies
11   this claim.  See Roth, 408 U.S. at 577.
12       Plaintiff's final argument on this claim concerns the
13   decertification for Driving under the Influence of Intoxicants
14   and Drug Recognition Expert Instruction.  Plaintiff contends
15   that Kok acted to deprive him of his licensure when she
16   contacted the agency responsible for granting the license, the
17   Oregon Department of Public Safety Standards and Training
18   (DPSST), and advised the agency of personnel issues involving
19   plaintiff.  According to plaintiff's declaration, DPSST
20   decertified him; the record contains no further information on
21   the matter.  DPSST is a separate agency from OSP, and no fact
22   in the record indicates that Kok exerted authority (much less,
23   served any role) in the internal business of certification or
24   decertification.
25       "State officials are not subject to suit under section
26   1983 unless they play an affirmative part in the alleged
27   deprivation of constitutional rights."  King v. Atiyeh, 814
28   F.2d 565, 568 (9th Cir. 1987).  On this record, I cannot hold

11 Opinion and Order

that Kok was individually involved in plaintiff's
decertification.  Nor does the record indicate that any OSP or
any other individual defendant was involved in DPSST's
decertification.  Thus, even if the decertification were to
rise to the "extreme case" in which a plaintiff states a
substantive due process claim because he is effectively
excluded from a line of work, plaintiff has not brought the
claim against the appropriate party.[2]

## II.  Sections 1983 and 1981 Equal Protection Claims

As pertinent to the summary judgment motions before the
court, plaintiff asserts that defendants Reese, Bathke, and
Ragon, "treated Plaintiff differently than similarly situated
Caucasian employees," subjected plaintiff to "disproportionate
disciple than similarly situated employees," and "terminated
Plaintiff because of his race and national origin" in violation
of his equal protection rights under the Fourteenth Amendment.[3]
Plaintiff further contends that defendants Bathke and Ragon
violated 42 U.S.C. § 1981 by discriminating against plaintiff

---

[2] Moreover, if plaintiff argues that the decertification forms
the basis of a procedural due process claim, he has not provided any
authority to the court indicating that plaintiff retained a property
interest in the revocable license.  See Roth, 408 U.S. at 577
(deprivation of a property interest, as defined by state law, is
required to state a section 1983 procedural due process claim).

[3] Plaintiff also asserts that Durbin, Kok, and Spirup violated his
equal protection rights and seeks relief under section 1983.
Complaint, p. 26.  Those individual defendants have not moved for
summary judgment on this claim.

12 Opinion and Order

on the basis of his race, ethnicity, and color.[4]

Both claims require plaintiff to prove that the defendants purposefully discriminated against him on the basis of his race. See Lowe v. City of Monrovia, 775 F.2d 998, 1010 & n. 10 (9th Cir. 1985). Proof of intentional discrimination is measured against the Title VII standard. Id. at 1011. Thus, plaintiff may carry the burden by establishing a prima facie case of disparate treatment under the McDonnell Douglas standard, or by presenting direct or circumstantial evidence of discriminatory treatment. Id. at 1009.

Defendants Reese, Bathke, and Ragon move for summary judgment on these claims. Under the relevant standards, the record does not disclose a genuine issue of material fact on question of disparate treatment. For that reason, summary judgment is granted in favor of Reese, Bathke, and Ragon on the section 1983 equal protection claim, and in favor Bathke and Ragon on the section 1981 equal protection claim.

David Reese

With respect to Reese, the record does not indicate that he had any authority to take any employment action against plaintiff, nor did he advise the decisionmakers in plaintiff's discipline and termination. Rather, I can discern from the record only that (1) Reese worked for the Governor of Oregon in a position that required attention to intersovereign relations

---

[4]Plaintiff also asserts section 1981 equal protection claims against OSP, Durbin, Kok, and Spirup. Complaint, p. 42. Those defendants have not moved for summary judgment on this claim.

13 Opinion and Order

with Native American Tribes of Oregon; (2) he knew that plaintiff raised overbilling questions and was undergoing a personnel investigation; and (3) he requested that the tribes be informed in the event that plaintiff would be terminated from OSP.  Plaintiff argues that those facts raise the inference that Reese influenced Durbin's decision to terminate plaintiff.  I disagree.

Those bare facts do not point to any exercise of authority by Reese.  Durbin has unequivocally testified that his decisionmaking did not include input from Reese.  Reese has testified that OSP personnel issues exceeded the scope of his employment duties, and that he had no role in the investigation or termination of plaintiff.  On this record, the section 1983 equal protection claim against Reese must be dismissed.

## Alfred Bathke and James Ragon

With respect to Bathke and Ragon, I first consider whether there is direct or circumstantial evidence of discriminatory intent that would support a section 1983 equal protection claim.  I then proceed to the analysis under the McDonnell Douglas standard.  Because the record does not support an inference of intentional discrimination, the section 1981 and 1983 claims against Bathke and Ragon must fail.

## Direct or Circumstantial Evidence

### Bathke

The record does not disclose direct evidence of discriminatory intent.  Plaintiff's responses in deposition

14 Opinion and Order

revealed no instances in which Bathke was known to "say anything that was racially derogatory towards anybody," "use any racial slurs," "make any comment that would suggest that he has a bias against people of color," or tell race-based jokes.

Plaintiff testified that he believed he was not promoted by Bathke in one instance due to racially motivated discrimination. His belief is based on Bathke's opinion that plaintiff "shouldn't bother" applying for a promotion at TGS, and that doing would be a waste of time, but no reference to race or national origin was made. Bathke was not a decisionmaker with respect to plaintiff's applications for promotion, and he also recommended plaintiff for promotion in two instances. The record simply does not allow a jury to infer that Bathke evidenced discriminatory intent in his dealings with plaintiff.

Ragon

Plaintiff testified at deposition that Ragon was not known to make racial comments or jokes. Rather, plaintiff bases his argument on the fact that Ragon owns a painting by renowned Western artist Charles Russell. The painting depicts an apparently Caucasian man on horseback pointing a rifle at a Native American. Plaintiff contends that Ragon described the painting as representing "a time when real men weren't afraid to confront the Indians all alone and deal with them." Ragon denies having made that statement. Even if he did, the statement does not relate to plaintiff's protected class, or to any employment action. See Godwin v. Hunt Wesson, 150 F.3d 1217, 1221 (9th Cir. 1998) (illustrating that derogatory

15 Opinion and Order

statements about the plaintiff's protected class made in context of employment action can support inference of racial motivation); <u>Chuang v. Univ. of Cal. Davis Bd. of Trustees</u>, 225 F.3d 1115 (9th Cir. 2000) (same).

<u>McDonnell Douglas</u> Test

In order to withstand summary judgment under the <u>McDonnell Douglas</u> standard, plaintiff must first make a prima facie showing that (1) he is a member of a protected class; (2) he performed her job satisfactorily; (3) he was treated differently from similarly situated individuals; and (4) he was subjected to adverse employment action. <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1028 (9th Cir. 2006). Defendants may rebut the prima facie case by providing evidence that it had a legitimate, nondiscriminatory reason for the alleged discriminatory treatment. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

If defendants meet that burden, in order to withstand summary judgment, plaintiff must then demonstrate the existence of a genuine issue of material fact on whether defendants' proffered reasons are pretextual. In this case, plaintiff has not met his burden to set forth a prima facie demonstration under <u>McDonnell Douglas</u>, and so the inquiry ends after the initial four elements in the burden-shifting process.

As a Mexican-American, plaintiff is a member of a protected class. <u>See Hispanic Taco Vendors of Washington v. City of Pasco</u>, 994 F.2d 676, 680 (9th Cir. 1993) (applying equal protection clause in hispanic vendors' challenge to city

16 Opinion and Order

ordinance).

The parties dispute the second element, i.e., whether plaintiff performed his job satisfactorily. Where those judging the plaintiff's performance are the same actors accused of discriminating against him, the court accounts for that consideration when evaluating any challenge to this element. Laird v. Marion County, Civ. 04-6154-HO, 2005 WL 1669828, *3 (D. Or., July 14, 2005). Defendant asserts that plaintiff took objectively unsatisfactory actions in the course of performing his job by viewing an inappropriate video on his work computer during work hours, misstating a date on a sworn BOLI statement, and disclosing confidential OSP documents to a gaming vendor. Plaintiff would argue that including a mistaken date on the BOLI complaint is a minor error and not a signal of poor job performance, that the inappropriate computer use did not greatly exceed the tolerated practice of computer use, and that the disclosure was also within the realm of accepted practice. I need not resolve whether these matters would demonstrate unsatisfactory job performance, or whether the record produces an issue of fact on this prong, because even if plaintiff could meet his burden on this element, he fails on the final two elements.

The record does not demonstrate a genuine issue of material fact indicating that plaintiff was subjected to disparate treatment based on race. Plaintiff lists a number of instances in which Bathke or Ragon is alleged to have treated him differently from similarly situated employees, but a systematic review of the record indicates that plaintiff's

17 Opinion and Order

arguments are unavailing.

First, plaintiff asserts that plaintiff was treated differently because he was reprimanded for falling short of workplace attire standards when others violated the attire policy with impunity. Though Bathke's testimony indicates that Ragon asked him to wear a tie, it does not (as plaintiff asserts) indicate that others who fell short of the policy were not counseled on the practice. Plaintiff's Ex. 1, p. 79.

Plaintiff next asserts that Bathke withheld a commendation from plaintiff but gave one to a Caucasian coworker, Olson. The record instead indicates that Olson received the commendation from Ragon. Thus, there is no indication that Bathke treated plaintiff differently from his Caucasian coworker. Nor is there any indication that Ragon withheld any commendation from plaintiff.

Plaintiff further asserts that Ragon disciplined him for abusing break time while allowing Caucasian subordinates to violate the break policy. The record does not indicate that any Caucasian subordinates' violations went unpunished. The record does show that Ragon, plaintiff's supervisor, took employees to his home during work time, and he underwent disciplinary procedures. The record also indicates that a Native American coworker, Courtney, was disciplined differently from a Caucasian coworker, Howery, with respect to break time, but the same supervisor did not mete out both punishments; rather, each was disciplined by a separate supervisor. Moreover, the record indicates that Howery and Courtney occupied different ranks and had differing disciplinary

histories.

Plaintiff next argues that plaintiff was disparately treated because he was disciplined for disclosing confidential information, while Ragon was permitted to hold discussions about confidential matters in public places. The record does not indicate that such public discussions were brought to a supervisor's attention only to remain unpunished, however.

Plaintiff also contends that Burdick, a Caucasian supervisor, retaliated against him and was not punished. That contention is not supported by the record. Rather, the record indicates that Burdick, like plaintiff, was investigated for a number of instances of alleged misconduct, and both received penalties after inculpatory facts were found.

Finally, plaintiff argues that Howery, a Caucasian, received lighter punishment than plaintiff after viewing pornographic video that was more offensive than the images that plaintiff viewed. The relevance of this incident is diminished by the fact that it occurred one year earlier than the events at issue in this case, and no timely complaint was made about the incident. Further, Howery and plaintiff differ in rank, and Howery's offense involved use of a personal computer on non-work time. In light of these circumstances, Howery does not present a useful comparator. In sum, plaintiff has failed to raise a triable issue on disparate treatment.

Similarly, the record does not disclose a genuine issue of material fact on the question whether Bathke or Ragon took any adverse employment action against plaintiff. Under Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000), employer

19 Opinion and Order

actions "reasonably likely to deter employees from engaging in protected activity," such as "lateral transfers, unfavorable job references, and changes in work schedules" qualify as adverse employer actions under the statute. Likewise, subjecting an employee to an evaluation process that involves requirements not otherwise applied to others undergoing review and heightening existing evaluation requirements is also, in the court's view, "reasonably likely to deter employees from engaging in protected activity," and therefore constitutes an adverse employment action.

Plaintiff asserts that Ragon and Bathke subjected him to adverse employment actions by investigating him and serving roles in his termination. Again, the record cannot bear this argument. Bathke and Ragon initiated a personnel investigation after receiving a report from a female coworker that plaintiff viewed inappropriate material on his computer. The personnel investigation was initiated before either Bathke or Ragon was informed that plaintiff made any billing-related complaints. Spirup determined that Ragon could not investigate the personnel complaint against plaintiff because Ragon could become a material witness. Bathke was removed from responsibility in the investigation after plaintiff made a complaint of wrongdoing against Bathke. Thereafter, Kok assigned Hershman, an OSP inspector, to investigate the complaint. Ultimately, Durbin made the findings that resulted in plaintiff's termination, and Durbin did not rely on Bathke or Ragon. Neither Bathke nor Ragon disciplined plaintiff.

Plaintiff asserts that Bathke continued to influence the

20 Opinion and Order

personnel investigation into plaintiff's conduct after he was
relieved of responsibility for conducting the investigation.
The record does not specify any involvement by Bathke in the
decision to terminate plaintiff.  Instead, the record reveals
that Bathke (1) posited that plaintiff might be a responsible
party in an inquiry into who might have leaked OSP information
to Galaxy Gaming; and (2) brought attention to an erroneous
date on plaintiff's sworn BOLI complaint and raised the
question whether a false swearing charge should be filed.  In
addition, in his role as second-level supervisor (and not as an
investigator) Bathke signed, under instruction from Inspector
Hershman, extensions that would enable Hershman to continue his
investigation of plaintiff; Bathke did not initiate the
extensions.  In none of these instances did Bathke or Ragon
take any tangible action against plaintiff, nor did Bathke or
Ragon implement any disciplinary action.  Because plaintiff has
not met his burden to demonstrate a prima facie case for
discrimination, summary judgment on the section 1981 and 1983
claims against Bathke and Ragon is granted.


III.  Equal Protection (Class of One)

     In short, plaintiff asserts that he comprises a "class of
one," and that defendants' alleged discriminatory actions
violate his right to equal protection under the law.  Plaintiff
concedes, however, that, under current Ninth Circuit precedent
the class-of-one theory does not apply in the public employment
context.  See Engquist v. Oregon Dept. of Agriculture, 478 F.3d
985, 996 (9th Cir. 2007), cert. granted, 128 S.Ct. 977 (2008).
21 Opinion and Order

The court accepts plaintiff's concession and grants defendants' motions for summary judgment on this claim.

IV.    Section 1983 First Amendment Claims

Plaintiff alleges that defendants restricted his First Amendment right to freedom of speech when they allegedly retaliated against him for (1) complaining to Bathke that he believed that TGS was overbilling the Confederated Tribes of the State of Oregon, (2) disclosing those billing concerns to Attorney General Hardy Myers and Lt. Col. McLain, (3) disclosing his billing concerns to Lynn Hillman, member of the Gaming Commission for the Confederated Tribes of Grand Ronde, and Randy Sitton of NIGC,[5] and (4) filing a tort claim notice and BOLI and EEOC complaints.

In order to withstand summary judgment on this claim, plaintiff must show that (1) he engaged in protected speech, and (2) a jury question exists on the question whether individual defendants took adverse employment action against him, and that the speech was a substantial and motivating factor for the adverse action.  Marable v. Nitchman, 511 F.3d 924, 929 (9th Cir. 2007).

Whether plaintiff's speech is protected under the First Amendment is a question of law, which the court evaluates under

---

[5] Defendants OSP, Reese, Spirup, Durbin, and Kok assert that plaintiff has not pleaded that his disclosure to Sitton is protected speech for which he suffered retaliation.  After reviewing the Third Amended Complaint, I conclude that plaintiff's incorporation of his recitation of general allegations work to include plaintiff's disclosures to Sitton within the section 1983 claim based on violation of the First Amendment.

22 Opinion and Order

the standard set forth in <u>Garcetti v. Ceballos</u>, __ U.S. __ , 126
S. Ct. 1951, 1956 (2006).  Under <u>Garcetti</u>, a public employee's
speech is only constitutionally protected if the employee spoke
"as a citizen on a matter of public concern." <u>Id.</u> at 1958.  An
expression made pursuant to a public employee's official
duties, or "speech that owes its existence to a public
employee's professional responsibilities," does not constitute
speech made in the employee's capacity as a citizen speaking
out on a matter of public concern.  <u>Id.</u> at 1960.  As such, it
may be restricted by the employer and cannot form the basis of
a free expression claim.

Plaintiff has testified that his job duties included the
duty to report misconduct within OSP.  When asked, "So to the
extent that you perceived there to be a problem with this
billing, did you believe you had an official duty to report
it," Eberz responded, "Yes."  Steringer Declaration, Ex. 4, at
13.  Plaintiff declared that his duty extends to reporting
misconduct to the supervisory level.  Eberz Decl. § 35.

I turn first to plaintiff's complaint to Bathke that he
believed that TGS was overbilling the Confederated Tribes of
the State of Oregon, and his disclosure of those billing
concerns to Attorney General Hardy Myers and Lt. Col. McLain.
Plaintiff's report to Bathke falls squarely within his duty to
report OSP misconduct.  Bathke, a superior and decisionmaker on
billing issues, was a professional authority whom plaintiff
would reasonably approach in discharging his duty to report
overbilling concerns.  <u>See</u> <u>Marable</u>, 511 F.3d at 932 ("the
inquiry into whether employee speech is pursuant to employment

23 Opinion and Order

duties is a practical one."). As such, plaintiff's reporting to Bathke cannot be considered speech as a citizen on a matter of public concern.

Plaintiff's statement to Attorney General Hardy Meyers does, however, qualify as protected speech. Plaintiff sent a message to Myers on July 24 which stated, in part:

> I work for the Tribal Gaming Section of the Oregon State Police.
>
> I am responsible for conducting backgrounds on potential vendors who want to do business with the Tribes in the state of Oregon.
>
> I am assigned the case of Galaxy Gaming.
>
> * * * *
>
> ***I am also obligated the report to you the following information:***
>
> * * * *
>
> ... I advised my station commander, Lt. Al Bathke, and our division commander Capt. Bob Sundstrom, that there was only approximately $3,500 left in the vendor's account, not nearly enough money to complete the case.
>
> Lt. Bathke and Capt. Sundstrom presented some sort of summary of the case at [a meeting with Oregon Department of Justice (DOJ) attorneys] that same month. The purpose of this meeting was to seek an "alternative method of funding this investigation without having to ask this vendor for more money...
>
> Lt. Bathke and Capt. Sundstrom convinced [two DOJ attorneys] to "endorse" their plan of billing my investigative work to Galaxy Gaming as "training" which comes directly out of the pockets of the Tribes of the State of Oregon, in violation of our Treaties with the Compacted Tribes of the State of Oregon. Also, if I am not mistaken, it is probably a federal crime. I apologize if I am mistaken. I strongly feel [that two DOJ attorneys] were not given the benefit of full knowledge of the facts in this case and have been used to further the plan by our station commander and division commander to deprive the Tribes of assets through fraudulent billing.

24 Opinion and Order

Crowley Declaration, Ex. 2 at 2 (emphasis in original).  Also
in the message, plaintiff explained that he contacted Sitton at
NIGC concerning these matters, and that he suspected that a
personnel complaint was put into place after his supervisors
learned about that meeting.

> Plaintiff further wrote:
>
> > After I found out just how much has been stolen from
> > the Tribes I reported the case to a head of a Tribal
> > gaming commission.  He has agreed to organize the
> > nine heads of the Compacted Tribes to demand
> > accountability for this offense against their
> > sovereign governments.
> >
> > I will be making personal contact with each of the
> > Tribes to report these same facts.
> >
> > I will be initiating contact with the appropriate
> > media outlets to report this misconduct to the
> > taxpayers of our state.
> >
> > * * * *
> >
> > What has been done is wrong and illegal and
> > something needs to be done to return the assets to
> > the victims of this crime and hold those men who
> > regard themselves above the law accountable.

Id. at 3-4.

In defendants' view, the message was sent in pursuit of
plaintiff's official duty to report misconduct at OSP.  I
disagree.  The record does not indicate that plaintiff's duty
to report extended outside the Oregon State Police Department.
Plaintiff sent the message to Attorney General Myers, an
elected state official charged with giving counsel to state
agencies such as OSP.  The record does not indicate that Myers
took any direct action in the matter prior to plaintiff's e-
mail, nor does it demonstrate that Myers had a role in shaping
OSP billing policies or authority to issue directives

25 Opinion and Order

concerning the matter.  Thus, regardless of whether plaintiff felt that he was "obligated" to make the report to Myers pursuant to an official duty (a motivation that is not clear on the face of the e-mail message), the effort exceeded his duty to report, as best I can discern the scope of that duty in the record before me.  See Freitag v. Ayers, 468 F.3d 528, 544-45 (9th Cir. 2006) (plaintiff, a correctional officer, acted as a citizen in complaining to an elected public official on these matters of public concern, viz., mismanagement of inmate).

The record indicates that plaintiff sent the message to Myers after having disclosed his concerns to Sitton, an NIGC employee, and Hillman, who had a stake in the matter as a member of the Grand Ronde Tribal Gaming Commission.  At this point, plaintiff's activities were taking a turn from reporting his concerns within OSP pursuant to his official duty to attracting public attention as a citizen to a practice that he considered "wrong and illegal."  In light of the context in which the message was sent, its content, and the limited information before me concerning the scope of plaintiff's duty to report, I conclude that plaintiff's statement to Attorney General Myers was made as a citizen, regarding a matter of public concern and exceeded the scope of his professional duty. See id. (correctional officer's complaints to independent agency concerning mismanagement of inmates qualified as protected speech).

Plaintiff forwarded the Myers message to Lt. Col. Tim McLain, adding,

> I am forwarding this message to you because you are the only member of our Department above the rank of

26 Opinion and Order

Senior Trooper that can be trusted to do the right
thing . . . . I can't keep lying for Lt. Bathke and
Capt. Sundstrom any longer.  It's not fair to the
Tribes and it[']s not fair to me to put that kind of
burden on my shoulders.  But when people at my level
want honesty we usually get investigated or worse,
so I am passing this on to you.

Crowley Declaration, Ex. 2 at 1.  The record does not provide

detailed information about McLain's role at OSP or his

relationship to plaintiff.  However, in light of the fact that

(1) plaintiff turned over his summary of the billing concerns

to McLain in response to what plaintiff perceived to be a

failure of his supervisors to adequately address the problem;

(2) plaintiff chose McLain based on his rank within OSP; and

(3) plaintiff expressed hope that McLain could ameliorate the

practice, I understand this statement to be speech provided

pursuant to plaintiff's duty to report, rather than a citizen's

expression on a matter of public concern.  As such, it is not

protected under the First Amendment.

Finally, I turn to plaintiff's disclosures to Randy

Sitton, NIGC member, and Lynn Hillman, of the Grand Ronde

Gaming Commission.  Plaintiff met with Sitton on July 11, 2005.

His purpose was to inquire about NIGC employment opportunities

and report his concerns about OSP's billing practices.  At the

meeting, which was conducted on plaintiff's personal time,

plaintiff presented Sitton with a report on the Galaxy Gaming

investigation, in support of a possible employment opportunity.

Plaintiff also communicated his concerns about OSP's billing

practices to Sitton.  There is no indication in the record that

plaintiff had a professional duty to disclose his concerns to

Sitton.  Defendants assert that plaintiff's speech is not that

27 Opinion and Order

of a citizen speaking on a matter of public concern because the
meeting had the additional purpose of inquiry about potential
employment opportunities for plaintiff at NIGC.  I do not agree
that the existence of a second conversation also unrelated to
plaintiff's OSP employment duties deprives plaintiff's billing
conversation of its character as a citizen's report concerning
alleged agency misconduct.  Plaintiff's report to Sitton falls
within the category of protected speech.

Plaintiff met with Hillman on July 20, 2005.  According to
a Grand Ronde memorandum and plaintiff's deposition testimony,
plaintiff notified Hillman that he had been assigned the Galaxy
gaming account, and that approximately 400 hours that he spent
preparing the report were billed to the tribes as training,
rather than to the vendor.  Plaintiff admits that he reported
to Hillman while on duty, and his e-mails were signed as a TGS
detective, but he denies that his communications were made
pursuant to his duty as an OSP officer.  In defendants' view,
plaintiff's speech was subject to regulation because it
implicated intersovereign affairs of the State of Oregon and
Native American Tribes, and as such, it is not entitled to
First Amendment protection.

I disagree.  Plaintiff sought out a tribal representative
and spoke as a citizen on a matter of concern to Native
American tribes, and on a issue of possible malfeasance, which
was of concern to the public at large.  Defendants point to no
policy indicating that, as a matter of OSP practice, such
communications were regulated.  Defendants do not point to any
OSP policy indicating that the scope of the duty to report

28 Opinion and Order

included tribes with whom OSP had dealings, or to potential victims of allegedly wrongful OSP practices. Under these facts, plaintiff's communications to both Sitton and Hillman qualify as statements of a citizen on matters of public concern and are entitled to protection under the First Amendment.

Finally, plaintiff asserts that a tort claim notice and Oregon Bureau of Labor and Industries (BOLI) and Equal Employment Opportunity Commission (EEOC) complaints filed in the course of events are protected speech that incurred defendant's retaliation. The record includes a tort claims notice, which indicates (without elaboration) that plaintiff intends to bring a whistleblower claim, among others, against defendants. Plaintiff does not indicate specific parts of these filings that qualify as protected speech. In the absence of an explanation of which statements are protected, and indication of an issue of fact concerning retaliation on the basis of protected statements, I cannot agree the administrative notices support plaintiff's section 1983 First Amendment claim. Coszalter v. City of Salem, 320 F.3d 968, 974 (9th Cir. 2003) ("speech that deals with individual personnel disputes and grievances" and that would be of no relevance to the public's evaluation of the performance of governmental agencies" is generally not of public concern) (internal quotation marks and citation omitted).

I turn now to the question whether the record discloses a genuine issue of material fact concerning whether any of the individual defendants took adverse employment action against plaintiff in retaliation for his protected speech (i.e.,

29 Opinion and Order

plaintiff's reports to Myers, Sitton, and Hillman).  As
explained above, the record does not demonstrate that
defendants Reese, Bathke and Ragon took any tangible
disciplinary action or any role in plaintiff's termination.
See id. at 976 ("when an employer's response includes only
minor acts, such as 'bad-mouthing,' that cannot reasonably be
expected to deter protected speech, such acts do not violate an
employee's First Amendment rights").  Although they may have
been apprised of plaintiff's reports to Myers, Sitton, and
Hillman, I cannot permit the First Amendment claims against
Reese, Bathke, or Ragon to move forward absent evidence that
these defendants subjected plaintiff to adverse employment
action.

The inquiry turns to defendants Spirup, Kok, and Durbin.
Spirup, Kok, and Durbin had knowledge of plaintiff's reports to
third parties concerning his billing concerns.  The record
indicates that Kok appointed Hershman to carry out plaintiff's
personnel investigation.  Durbin, Director of the OSP Gaming
Enforcement Division, made the decision to terminate plaintiff,
with input from Kok, Captain at the OSP Office of Professional
Standards, and Spirup, Commander of Support Services Bureau.[6]

Plaintiff can show that First Amendment retaliation was a
substantial or motivating factor behind employer's adverse
employment actions with (1) evidence regarding the proximity in

---

[6]Once removed from the personnel investigation, Bathke did not
advise Durbin or Kok on matters that formed the basis of plaintiff's
termination, though Bathke did respond to Inspector Hershman's
requests for information as Hershman discharged his investigatory
duties.

30 Opinion and Order

time between the protected action and the allegedly retaliatory employment decision; (2) evidence that his employer expressed opposition to his speech, either to him or to others; and (3) evidence that employer's proffered explanations for the adverse employment action were false and pretextual. Id. at 977.

No fact in the record indicates that Spirup had any role in plaintiff's investigation or termination aside from Durbin's testimony that he received input from Spirup but made the decision alone. On this record, I cannot ascertain a genuine issue of material fact indicating that Spirup took adverse employment action against plaintiff on the basis of his protected speech.

However, the timing of the investigation and termination raise an inference that plaintiff's investigation and termination may have been motivated in part to retaliate against plaintiff's protected speech. Kok appointed Hershman to investigate plaintiff and was kept informed about the investigation on a daily basis. The personnel investigation began on July 8, prior to knowledge about plaintiff's alleged whistleblowing, but extended during and after the period of plaintiff's alleged whistleblowing activity. Kok expressed her opinion to Durbin that plaintiff should be terminated; however, the record does not indicate the extent of her role in the termination process. In January 2006, Kok called DPSST and reported plaintiff's employment status, and DPSST later rescinded plaintiff's license.

These facts, though sparse, could support an inference that Kok, who was superior to Hershman, influenced his work,

31 Opinion and Order

that the investigation took a retaliatory turn once plaintiff's alleged whistleblowing activities were discovered, and that instances of protected speech (plaintiff's disclosure to Myers, Sitton, or Hillman) drove the result of the investigation.

Similarly, the record could support an inference that Durbin, who had been apprised of plaintiff's protected speech, made his decision to terminate based in part on retaliation for plaintiff's disclosures. The stated basis for termination was violation of OSP policy, but plaintiff points to evidence that the stated reasons were pretextual: during plaintiff's personnel investigation, plaintiff had been publicizing embarrassing complaints about OSP's billing practices, which led to remuneration to the tribes; plaintiff's first and second level supervisors disapproved of plaintiff's public complaints and worried that plaintiff's efforts might harm relationships with the tribes; and, after a post-termination hearing, an arbitrator found the bases for plaintiff's termination did not rise to just cause for discharge. A jury could infer that institutional pressure to deter plaintiff's speech by terminating him influenced Durbin's decision. Because the record could raise a jury issue on plaintiff's First Amendment claims against Kok and Durbin, those claims withstand summary judgment.[7]

//

//

//

---

[7]On summary judgment, Kok and Durbin have not argued that they are entitled to qualified immunity.

32 Opinion and Order

<u>Conclusion</u>

Motions #142 and #150 are granted, and motion #147 is granted in part and denied in part.


IT IS SO ORDERED.

Dated this ___14___ day of March, 2008.


_____
THOMAS M. COFFIN
United States Magistrate Judge

33 Opinion and Order